# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MARTIN JARAMILLO,

    Plaintiff,

vs.                                                      Civil No. 99-575 JP/WWD

KENNETH S. APFEL,
Commissioner of Social Security,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
### Proposed Findings

    1.  This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed January 18, 2000 **[docket # 9]**, and Plaintiff's Motion to Supplement Transcript, filed January 18, 2000 **[docket # 10]**.  The Commissioner denied Plaintiff's request for Supplemental Security Income ("SSI") benefits.  Plaintiff alleges a disability since June 9, 1997 due to neck, back and left hip injuries.  He was 39 years old at the time of the ALJ's decision and has a ninth grade education.  Mr. Jaramillo has past relevant work experience as a woodcutter.

    2.  After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied Plaintiff's application, concluding that Plaintiff's subjective complaints were not fully credible and that Plaintiff retained the residual functional capacity to perform sedentary work activities that do not require significant reading and writing abilities.

    3.  The Appeals Council denied Mr. Jaramillo's request for review of the ALJ's decision, thus rendering the ALJ's decision the final decision of the Commissioner.  Plaintiff now seeks

review of that final decision pursuant to 42 U.S.C. §405(g).

4. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id.

5. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) no substantial evidence exists to support the ALJ's decision since Plaintiff's condition met or equaled medical listings § 1.05(C) and § 1.03; (2) the evidence which Plaintiff submitted to the Appeals Council was improperly not considered; and (3) vocational expert testimony established that Plaintiff was disabled.

6. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C.§ 1382c(a)(3)(A)).

7. Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted)

8. Plaintiff complains of constant pain in his back, left hip and shoulder. He stopped working as a woodcutter in 1993 and has not sought another kind of work, either full or part-time since then. Tr. at 27. He testified that he cannot turn his head to the side, and his back "won't go." Tr. at 38. Plaintiff lives with his girlfriend and her 16 year-old son who receives SSI. Tr. at

25. He helps with household chores, and spends most of his day drinking coffee, watering trees and lying down "off and on." Tr. at 32, 38. He does not engage in any hobbies, and does not socialize, although he attends church twice a month. He has no hobbies, but he does occasionally paint. Tr. at 30-31.

9. Plaintiff stated that he can sit for only 15 to 20 minutes at a time, but if sitting in a reclined position, can sit for about 2 hours. Tr. at 34. He said that he can stand for 30 minutes, walk about a quarter mile and occasionally lift 20 pounds, although he stated that his doctor had recommended that he not lift more than five pounds. Tr. at 35-36.

10. Because Plaintiff's Second Alleged Error affects the scope of evidence this Court will consider, I will address that allegation first.

**New Evidence**

11. Plaintiff contends that the evidence which Plaintiff submitted to the Appeals Council was improperly not considered. Plaintiff refers specifically to two documents, Ex. A and Ex. B included in his Motion to Supplement the Record. I find that the motion should be denied for the following reasons.

12. Exhibit A is a medical report by Dr. O'Sullivan dated August 19, 1997, which Plaintiff contends was submitted to the Appeals Council but improperly not considered because the second page of the medical report was missing from the record. The transcript contains a copy of just the first page of the report at page 160. However, I find both pages of the report elsewhere in the transcript at pages 180-81. Contrary to Plaintiff's contention, this report was specifically considered by the ALJ at page 15 in his decision.

13. Exhibit B is Dr. O'Sullivan's medical report dated February 10, 1999 which Plaintiff

states was sent to the Appeals Council on February 25. Plaintiff is correct that the Appeals Council does not mention this report in its March 18, 1999 denial. However, I find no error in the fact that the Appeals Council did not consider the report, because it was not properly part of the record in the first place. Selman v. Califano, 619 F.2d 881, 885 (10th Cir. 1980) (appeal must be based on record); 42 U.S.C. § 405(g); see 20 C.F.R. § 404.976(b)(1) ("The Appeals Council will consider all the evidence in the administrative law judge hearing record as well as any new and material evidence submitted to it which relates to the period on or before the date of the administrative law "); see also 404.970(b) (authorizing claimants to submit new and material evidence to Appeals Council relating to period on or before ALJ's decision).

14. In determining whether substantial evidence supports the Commissioner's decision, a court must examine the record as a whole, including the additional materials submitted to the Appeals Council. See O'Dell v. Shalala, 44 F.3d 855, 858, 859 (10th Cir.1994). However, submitting the report to the Appeals Council does not make it part of the record. Proffered evidence must be related to the time period for which the benefits were denied. Hargis v. Sullivan, 945 F.2d 1482, 1493 (10thCir. 1991) (citing Johnson v. Heckler, 767 F.2d 180, 183 (5th Cir. 1985)); see Pace v. Shalala, unpubl. op., 21 F.3d 1122, 1996 WL 117531 *6 (10th Cir. N.M. 1994).

15. In this case, the report is outside the relevant time period because it was done after the time period considered by the ALJ, i.e., the time period ending June 26, 1998 which is the date of the decision. Dr. O'Sullivan noted in the report that the February 10, 1999 visit was the "[f]irst visit in more than one year." Pltff's Ex. B. If his condition has deteriorated since the ALJ's decision, Mr. Jaramillo may wish to file a new application. Pace. at *6; see Johnson v.

4

Heckler, 767 F.2d 180, 183 (5th Cir. 1985).  Relief is not warranted on this first ground.

**Listed Impairment**

16. Plaintiff alleges that no substantial evidence exists to support the ALJ's decision since Plaintiff's condition met or equaled medical listings § 1.05(C) and § 1.03. The ALJ determined that Plaintiff's impairments do not meet or equal any of the listed impairments under the regulations.

17. For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  Sullivan v. Zebley, 493 U.S. 521, 531 (1990);  see Social Security Ruling (SSR) 83-19.

18. In support of his position that Plaintiff's impairment satisfies both medical listings § 1.05 (disorders of the spine) and § 1.03 (arthritis of major weight-bearing joint), he relies on Dr. O'Sullivan's two reports, dated August 19, 1997 as well as February 10, 1999.  For reasons already discussed, the latter report will not be considered as part of the record on review.

19. Plaintiff points to Dr. Smoker's June 1997 report which states that Plaintiff has limited flexion of the cervical spine to 10 degrees and extension to 5 degrees, Tr. at 171; and to Dr. O'Sullivan's assessment which stated that Plaintiff was "incapable of doing any tasks which require any motion whatsoever in the cervical, thoracic or lumbar spine."  Tr. at 181.

20. Notwithstanding these medical findings, the ALJ was not in error in concluding that Plaintiff's impairments do not meet the requirements of  § 1.05, which requires at a threshold level "*ankylosis* or *fixation* of the cervical or dorsolumbar spine at 30 [degrees] or more of flexion measured from the neutral position . . . ."  Plaintiff urges for a gloss on the interpretation that is

5

unsupportable. The findings relied on by Plaintiff indicate a *flexion* of *less* than 30 degrees, whereas the listing requires a *fixation* of *more* than 30 degrees. The record contains no evidence of ankylosis or fixation.

21. Similarly, the residual functional capacity assessments indicate an ankylosing spondylitis, but there is no mention of fixation to any degree that comes within the impairment listing. Tr. at 165, 172, 186-87.

22. Medical listing § 1.03 requires signs of marked limitation of motion or abnormal motion of the affected joint with gross anatomical deformity of the hip or knee and supported by x-ray evidence of either significant joint space narrowing or significant bony destruction and markedly limiting ability to walk and stand. A March 1995 examination by Dr. Herrera revealed no deformity of the weight-bearing joints and had no limitations with regard to standing or walking. Tr. at 163.

23. Dr. Smoker also opined in June 1997 that Plaintiff had no deformity of any joints and that Plaintiff could "stand, walk, stoo[p], squat, sit, but is limited in bending" and that he could walk "normally in terms of speed, stamina, stability without assistance." Tr. at 166. Given these findings in the record, the ALJ did not err in concluding that Plaintiff did not meet listing § 1.03.

24. Plaintiff argues that the ALJ did not accord proper deference to Dr. O'Sullivan's report, since he was a treating physician and further contends that Dr. O'Sullivan's findings support the conclusion that Plaintiff met listing § 1.03A. A treating physician's opinion must be given substantial weight unless good cause is shown to disregard it. Goatcher v. Dep't of Health & Hum. Serv., 52 F.3d 288, 289 (10th Cir. 1995) (citing Frey v. Bowen, 816 F.3d 508, 513 (10th Cir. 1987)).

25. However, this deference is premised on several factors, such as length of the treatment relationship, frequency of examinations, and the consistency of that physician's findings with other relevant evidence and the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). If the ALJ disregards or discounts the treating physician's opinion, he must give specific, legitimate reasons for doing so. Id. at 290. The ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

26. In this case, the ALJ did discount Dr. O'Sullivan's opinion and findings, but he also provided an explanation which was based on the Goatcher factors: type and length of treatment, purpose of the treatment and form of the opinion. Tr. at 15. The ALJ also stated that "even if I were to accord Dr. O'Sullivan the status of a treating physician, I do not find his opinion inconsistent with my findings of the claimant's residual functional capacity. . . ."

27. Moreover, the ALJ even found Plaintiff's own testimony, as well as his observations of Plaintiff's conduct during the hearing, to be more consistent with other medical evidence than with Dr. O'Sullivan's assessment with regard to his ability to lift, sit and move his head and neck. Tr. at 15-16, 35, 37-38.

28. I find that the ALJ's assessment of Dr. O'Sullivan's status and report was based on substantial evidence, given other medical evidence in the record which have been referred to above. Thus, this alleged error has no merit.

**Vocational Testimony**

29. Plaintiff contends that vocational expert testimony established that Plaintiff was disabled. The ALJ relied on vocational testimony to find that Plaintiff could perform jobs that

7

exist in significant numbers in the national economy. Plaintiff refers to the testimony by the vocational expert ("VE") in response to a hypothetical which included restrictions placed on Plaintiff by Dr. O'Sullivan.

30. Having reviewed the record and listened to the testimony, the VE testified that there were three occupations in the sedentary, unskilled area which Plaintiff could do, each having a significant number of at least 1,000 regionally and 20,000 nationally. However, when Plaintiff's representative posed a hypothetical claimed to reflect the restrictions imposed by Dr. O'Sullivan ("[p]hysically incapable of tasks which require any motion in the cervical, thoracic, or lumbar spine"), the VE opined that all of the jobs would be eliminated because they would require some flexion of the cervical spine. Tr. at 42.

31. Hypothetical questions must reflect precisely all of a claimant's impairments, but the questions posed to the VE need only reflect impairments and limitations that are borne out by the evidentiary record. Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996) (citing Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995)). Because the ALJ discounted Dr. O'Sullivan's 1997 report for legally proper reasons, he did not err in not basing his conclusions on the VE's testimony with regard to the hypothetical including the doctor's restrictions.

32. Although the Commissioner, and not medical providers, determines whether a claimant meets the statutory definition of disability, see 20 C.F.R. § 404.1527(e)(1), the ALJ may look to see whether a doctor has opined that claimant can perform work. See Kelley v. Chater, 62 F.3d 335, 338 (10th Cir. 1995); Leggett v. Chater, 67 F.3d 558, 565 (5th Cir. 1995).

33. In addition to the objective medical findings referred to above, I note that other doctors who examined Plaintiff opined that he was able to perform certain work. In March, 1995,

8

Dr. Herrera opined that Plaintiff could perform medium duty work. Tr. at 164. In July 1997, Dr. Smoker found Plaintiff capable of "average work situation" noting that he "probably is not capable of heavy lifting but is able to do such work as clerking or 'gas station attendant.'"

34. In sum, I find that there is no merit to any of Plaintiff's alleged errors. Also, in light of the above findings, Plaintiff's Motion to Supplement, **[docket # 10]** should be denied.

### Recommendation

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing, filed January 18, 2000 **[docket # 9]**, and Plaintiff's Motion to Supplement Transcript, filed January 18, 2000 **[docket # 10]** be DENIED and this cause of action dismissed with prejudice. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE